UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| AIR CHINA LIMITED ) | |
| ) | |
| Plaintiff, ) | |
| ) | CASE NUMBER: 07-CIV-1089 |
| v. ) | (CMH/TCB) |
| <AIRCHINA.COM>, In Rem, VERISIGN INC. as ) | |
| Registry, GO DADDY SOFTWARE, INC. as ) | |
| Registrar ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM IN SUPPORT OF
DEFENDANT'S MOTION TO SET ASIDE DEFAULT AND
DEFENDANT'S MOTION TO DISMISS**

Defendant Jinsu Kim ("Defendant"), appearing special by counsel, files this response to Plaintiff's Motion for Default Judgment and requests that the Clerk's entry of Default be set aside and that the case be dismissed for lack of jurisdiction.

**Introduction**

Respectfully, this Court does not have jurisdiction of this matter for the following reasons: (1) Pursuant to Rule 4(k) of the ICANN Uniform Domain Name Dispute Resolution Policy, Defendant filed an appeal of the ADNDRC decision in the Suwon District Court, Ansan Branch in the Republic of Korea (hereinafter, "Korean Court") granting the Korean Court jurisdiction over the domain name and both Defendant and Plaintiff; (2) Defendant filed in a court of competent jurisdiction prior to Plaintiff's filing this parallel *in rem* action and, based on the *Princess Lida* doctrine, this Court should decline jurisdiction of this matter and (3) Defendant was not properly served in the matter before this Court.

1

**1. Appeal of ADNDRC Decision by Defendant**

The U.S. Department of Commerce and the Internet Corporation for Assigned Names and Numbers ("ICANN") have granted VeriSign the contract to be the exclusive registry for ".com" domain names. Go Daddy, as a registrar, has a license from VeriSign to provide domain name registration for ".com" top level domains ("TLDs"). The Asian Domain Name Dispute Resolution Centre ("ADNDRC") was authorized under ICANN's Uniform Dispute Resolution Policy (UDRP) and must therefore, abide by the rules in that policy. A domain name cannot be registered without the registrant agreeing to abide by the UDRP rules because the UDRP is incorporated by reference and made a part of all registration agreements. Accordingly, if an unfavorable decision is rendered in a UDRP proceeding, the registrant of the domain name has a right to appeal that decision in a court of competent jurisdiction. UDRP Rule 4(k) states, in pertinent part, as follows:

> 4.k. Availability of Court Proceedings. . . . If an Administrative Panel decides that your domain name registration should be . . . transferred, we will wait ten (10) business days . . . after we are informed by the applicable Provider of the Administrative Panel's decision before implementing that decision. We will then implement the decision unless we have received from you during that ten (10) business day period official documentation (such as a copy of a complaint, file-stamped by the clerk of the court) that you have commenced a lawsuit against the complainant . . . . If we receive such documentation within the ten (10) business day period, we will not implement the Administrative Panel's decision, and we will take no further action, until we receive . . . (iii) a copy of an order from such court dismissing your lawsuit or ordering that you do not have the right to continue to use your domain name.

On March 16, 2007, Air China filed a UDRP proceeding in the ADNDRC against Domains by Proxy, a wholly owned subsidiary of the Go Daddy registrar, which allows its clients' determinative WHOIS contact information to remain private. When a legal proceeding is filed against a domain name of one of its clients, Domains by Proxy must notify its client that

such a proceeding has been instituted and then it must also divulge to the complainant the actual name, address and contact information of the registrant that is held in the Go Daddy database (the determinative WHOIS information). This is a well-known and accepted practice in the domain community and was sanctioned by ICANN to protect the sensitive emails attached to registered domains from being acquired by thieves intent on stealing domains, to protect the contact information of major corporations, and to prevent spam to these emails. Since Jinsu Kim, also known as Jin Soo Kim ("Kim"), was a client of Domains by Proxy, the public WHOIS information showed Domains by Proxy as the listed registrant of the domain AIRCHINA.COM. However, the determinative WHOIS record showed Kim as the registrant with a Korean address. (Attached hereto as Exhibit A is a true and correct copy of the determinative WHOIS record.) Once notified of the ADNDRC proceeding, Kim filed a timely responsive brief. However, on September 12, 2007, the ADNDRC Panel ruled in favor of complainant and granted the transfer of the ARICHINA.COM domain to Plaintiff.

Pursuant to UDRP Rule 4(k), Kim was allowed to appeal the ADNDRC decision to a court of competent jurisdiction within ten (10) days in order to prevent the ADNDRC from implementing the Administrative Panel's decision. A court of competent jurisdiction is one in which the address of the registrant, as shown in the WHOIS database, is located. Kim's address in the determinative WHOIS is listed as 1113-1406, GreenVille Jugong, Apt. Choji-dong, Danwon-gu, Ansan 425873, Republic of Korea. As a result, on or about September 20, 2007 Kim, without legal counsel, filed an appeal petition in the Korean Court (attached hereto as Exhibit B, is a true and correct copy of the September 28, 2007 Certified English Translation of the September 20, 2007 Petition). Kim timely submitted the Appeal Petition to the administrative

agent for the ADNDRC, hired an attorney, and proceeded with the appeal of the ADNDRC decision in the Korean Court. **Air China has entered an appearance and actively participated in the proceedings, and thus, has submitted to the jurisdiction of the Korean Court**. Contrary to Plaintiff's assertions that "Air China has no other means or recourse but to seek transfer or cancellation in this US Court," Air China has legal recourse in the Korean Court. In Plaintiff's Memorandum In Support of Default Judgment ("Plaintiff's Memo"), Plaintiff states that the Air China "filed a Korean business certificate and opened a Korean branch office in 1995" (Plaintiff's Memo, pg. 2). Air China does not assert a United States trademark / service mark application or registration, but rather its Chinese registration and its global use of the mark AIR CHINA.  In view of the fact that Air China has offices and has been doing business in Korea since 1995, it is more likely that the Korean Court, where that court has personal jurisdiction of both Defendant and Plaintiff, is the better forum to decide the legal issues relating to the domain name AIRCHINA.COM.

Most importantly, this District Court has stated in *Alitalia-Linee Aeree Italiane S.p.A. v. CASINOALITALIA.COM and Technologia JPR, Inc.*, 128 F. Supp. 2d 340 (E.D. Va. 2001), that the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), provides mark owners with two mutually exclusive avenues for pursuing a complaint against domain holders and mark owners cannot invoke and pursue both simultaneously. A mark owner may proceed against a domain holder either *in personam* against the domain owner, and if there is no personal jurisdiction over the domain holder, *in rem* against the domain name itself. Air China is simultaneously engaged in an action in Korea based on *in personam* jurisdiction, and engaged in an *in rem* action in this Court in regards to the same domain, AIRCHINA.COM. Consequently,

because the appeal petition was filed in Korea long before the commencement of this *in rem* action and, pursuant to the UDRP Rule 4(k), in a court of competent jurisdiction where there is personal jurisdiction over both parties, this Court does not have jurisdiction of this matter.

This Court should honor the appeal process as set forth by ICANN and immediately dismiss this *in rem* action.

**2. The Korean Court has Jurisdiction of the Domain Name AIRCHINA.COM**

    **Princess Lida Doctrine**

Defendant filed an appeal of the ADNDRC proceeding on or about September 20, 2007 in the Korean Court and Plaintiff filed this current *in rem* action in this Court on or about October 30, 2007. The *Princess Lida* doctrine asserts that a federal court ought normally to decline, under principles of international comity, jurisdiction over a particular property over which a foreign court has already asserted jurisdiction. *Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456, 59 S. Ct. 275 (1939). Although Plaintiff attempts to diminish the *Princess Lida* doctrine, it is clear that this Court has legal precedent to reject this *in rem* parallel proceeding and dismiss the instant case while the originally filed and ongoing case in Korea continues. By Plaintiff's own submissions, *Princess Lida* is the seminal case establishing that a federal court, based on the principles of international comity, may not exercise jurisdiction over property where another foreign court has asserted jurisdiction. It is well settled that the first court to seize jurisdiction in a case requiring control over property "may exercise that jurisdiction to the exclusion of any other court." *Globalsantafe Corp. v. Globalsantafe.com,* 250 F. Supp. 2d 610, 624-625 (E.D. Va. 2003); *see Sec. & Exch. Comm'n v. Banner Fund Int'l*, 211 F.3d 602 (D.C. Cir. 2000). The *Globalsantafe* court clearly ruled to maintain jurisdiction in federal court

as opposed to a Korean Court because **the complaint was filed in the federal court prior to the Korean court filing**. *Id.*; *see also Al-Abood v. El-Shamari*, 217 F.3d 225 (4th Cir. 2000). *Globalsantafe* clearly supports the first-in-time rule and thus supports Defendant's position that, since Kim was the first to file in the Korean Court, the subsequent domain name *in rem* ACPA actions must be dismissed.

However, contrary to the facts in the *Globalsantafe* case where the court found that the Korean proceeding was obviously instituted to block that court's Judgment Order, *Globalsantafe,* 250 F. Supp. 2d at 625, in this case the appeal petition filed in the Korean Court was filed as a matter of right pursuant to the ICANN UDRP Rules and not in response to this or any other court order. Indeed, Plaintiff would have this Court believe that the Korean Court will take enormous steps to "frustrate the significant policies of the domestic forum" because there is "a substantial possibility that the [Korean Court] result will not conform to international and U.S. law and public policy, specifically the protections of intellectual property rights set forth in the Paris [Convention]" (Pl.'s Mem. In Supp. of Mot. for Default J., at 24). Obviously Plaintiff has a great deal of distrust of the Korean Court system, but "distrust" coupled with "substantial possibility" as to how the Korean Court will rule, is not a legal basis for this Court to reject the principle of international comity and disregard the first-in-time rule. Moreover, Plaintiff argues that in the matter of comity, "we must consider our own laws, and the public policy, as well as the rights of our residents under the laws of the United States." Plaintiff would have this Court believe that the rights of a US citizen is are jeopardy. Contrary to that assertion, Plaintiff is not a US citizen, but rather a company incorporated under the laws of China and doing business in the United States (attached hereto as Exhibit C are true and correct print-outs from the California

and New York state corporation databases showing Air China Limited as a Chinese company). Defendant would argue, that because US laws are favorable to trademark owners, international companies are entitled to bring ACPA *in rem* actions in the US even though these companies have sufficient contacts in other countries where *in personam* jurisdiction of domain owners is available, in order to circumvent the ICANN UDRP appeal process. If this Court allows Plaintiff to disregard the Korean Court action, it is opening the door for foreign nationals to avail themselves of the US court system for their own monetary gain by circumventing legal procedures.

Additionally, as pointed out by the court in *Globalsantafe,* significant concerns arise regarding comity among nations when there are conflicting court orders. *Globalsantafe,* 250 F. Supp. 2d at 626. "Comity ordinarily requires that courts of a separate sovereign not interfere with concurrent proceedings based on the same transitory claim, at least until a judgment is reached in one action." *Id*. It would be judicious to allow the Korean Court to continue its proceeding because it was filed first and both parties are participating in that matter. Clearly, this Court should apply the *Princess Lida* doctrine and decline jurisdiction over the domain name AIRCHINA.COM because the Korean Court asserted jurisdiction prior to this Court.

**Judicial Economy**

Judicial economy also allows a federal court to abstain from hearing a case "for reasons of wise judicial administration." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-18, 47 L. Ed. 2d 483, 96 S. Ct. 1236 (1976). The Fourth Circuit has adopted the majority viewpoint relating to certain criteria when a plaintiff files a lawsuit in federal court despite the fact that the same case is pending in another jurisdiction. *Baseline Sports, Inc. v.*

*Third Base Sports*, 341 F. Supp. 2d 605 (E.D. Va. 2004); *see Meyers v. Levinson*, No. 4:02cv9, 2005 U.S. Dist. LEXIS 42799 (E.D. Va. 2005). Specifically, to abstain under *Colorado River*, a district court must (1) first determine the existence of parallel proceedings, and (2) determine whether "exceptional circumstances" exist to warrant abstention to include (a) assumption by either court of jurisdiction over property; (b) inconvenience of the federal forum; (c) desirability of avoiding piecemeal litigation; (d) the order in which the courts obtained jurisdiction and the progress achieved in each action; (e) source of applicable law; and (f) whether the state proceedings will adequately protect the parties' rights. *Baseline Sports,* 341 F. Supp. 2d at 608. The Fourth Circuit in *Baseline Sports* also adopted the additional element that this Court must consider whether the later-filed lawsuit is reactive or vexatious. *See also Moses H. Cone Mem'l Hops. v. Mercury Constr. Corp.*, 460 U.S. 1, 74 L. Ed. 2d 765, 103 S. Ct. 927 (1983); *Holland v. Hay*, 840 F. Supp. 1091, 1102 (E.D. Va. 1994). Following these elements, it is clear that this Court should dismiss the instant case due to the fact that virtually the same case featuring the same parties had previously been filed and continues to be litigated in another competent jurisdiction.

**Parallel Proceedings**

The instant case constitutes "parallel proceedings" under the stated criteria because essentially the same case featuring the same parties was first filed in another court of competent jurisdiction. The *Colorado River* rule states that the court must determine the existence of parallel proceedings in state court. However, it should be noted that the Fourth Circuit views "parallel proceedings" in a more general light to be two lawsuits that have "substantially the same parties litigate substantially the same issues in different forums." *New Beckley Mining*

*Corp. v. International Union*, 946 F. 2d 1072, 1073 (4th Cir. 1991). In fact, "parallel proceedings" are still considered parallel even with some differences, such as additional parties. *Baseline Sports,* 341 F. Supp. 2d at 609 (citing *Holland*, 840 F. Supp. at 1100). Additionally, the *Princess Lida* doctrine adds a further level of support to the assertion that federal courts should decline jurisdiction under rules of international comity when the same case is being litigated in a foreign court. *See also Al-Abood v. El-Shamari*, 217 F.3d 225.

In regard to the instant case and the ongoing Korea Court matter, the following are indisputably the same in both proceedings: (1) Defendant, (2) Plaintiff, (3) the property in dispute, and (4) the facts. There is no question that the District Court in Korea is a court of competent jurisdiction. Essentially, what we have here is the same exact case filed in this Court despite the fact that the same exact case was previously filed and continues to be litigated in another competent forum. Based on the "parallel proceedings" test, there is no question that the instant case is running parallel to the ongoing litigation in Korea.

### "Exceptional Circumstances" Test

*Colorado River* states the rule that exceptional circumstances justify the dismissal of a later-filed case. In order to make the determination of exceptional circumstances, the court must take into account (1) jurisdiction over property if applicable; (2) inconvenience of the forum; (3) order in which jurisdiction was obtained; (4) avoidance of piecemeal litigation; (5) presence of federal question if applicable; and (6) whether the state proceedings will adequately protect the parties' rights. The instant case clearly should be deemed an exceptional circumstance due to the fact that this matter is and has continues to be litigated in another competent forum. Moreover, while it is true that federal courts have a "virtually unflagging obligation" to hear all cases over

which they have jurisdiction, *Colorado River* specifically deemed that dismissals are warranted "for reasons of wise judicial administration" under exceptional circumstances such as in the instant case. *Meyers* added that exceptional circumstances should be applied under the "clearest of justifications." *See also Moses H. Cone,* 460 U.S. 1.

### 1. Jurisdiction over Property

It is undisputable that during the ADNDRC proceeding, the ADNDRC controlled the domain AIRCHINA.COM. It is also undisputable that the UDRP Rule 4(k) allows a registrant to appeal an unfavorable decision and if such action is taken, the arbitration board will take no action to transfer the domain until a court of competent jurisdiction makes a ruling. It can be argued that both the Korean Court and this US Court has control of the domain. If the Korean Court rules against Defendant, the order will be sent to the Go Daddy registrar and the domain will be transferred to Plaintiff. The same is true if this Court rules against Defendant. Therefore, both courts have jurisdiction of the property.

### 2. Inconvenience of the Forum

Because of the detailed history, including records and witnesses relating to the previous and ongoing litigation in Korea, this Court must be aware that it would be wholly inconvenient to litigate this case in the US while the exact same case continues to be litigated in Korea. In considering whether this federal forum is inconvenient, this Court must look at the "relative ease of access to sources of proof, availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing witnesses." *See Colorado River,* 424 U.S. at 818. The court in *Baseline Sports* dismissed a case filed in concurrent jurisdictions under similar circumstances by applying the premise that the first court was more convenient because

most of the records and witnesses involved in the cases were in the first court. Similarly here, witnesses, records and the parties are in Korea. Because virtually everything related to this *in rem* action is also the same in the Korean action, this factor should be given great weight by this court in determining that the instant case should be dismissed.

### 3. Order in which Jurisdiction was Obtained

On or about September 20, 2007, Defendant filed an appeal of the ADNDRC proceeding in the Korean Court and on October 30, 2007 Plaintiff filed this current *in rem* action in this Court. Defendant clearly filed first, pursuant to UDRP Rule 4(k) in a court for which there is personal jurisdiction over both Defendant and the Plaintiff. This Court should weigh heavily in favor of dismissal of the instant case while the case in the Korean Court can be resolved.

### 4. Avoidance of Piecemeal Litigation

By proceeding in a blatantly duplicative case in this *in rem* action, the Plaintiff attempts to do an "end run" around the rules proscribed by the ICANN UDRP Policy. Where there is contemporaneous exercise of concurrent jurisdiction, the court must consider principles of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River,* 424 U.S. at 817, *quoted in Baseline Sports,* 341 F. Supp. 2d at 610. In fact, *Baseline Sports* court reiterated that this aspect has been deemed the most important of the *Colorado River* factors. *Baseline Sports,* 341 F. Supp. 2d at 610; *see also Holland,* 840 F. Supp. at 1101. The *Baseline Sports* court went on to take a very hard line toward the correlation between parallel proceedings and wastefulness of judicial resources. Certainly that court realized that judicial "diseconomy" alone does not justify abstention or dismissal. *See also Gordon v. Luksch,* 887 F. 2d 496 (4th Cir. 1989). But in light of the facts in *Baseline*

*Sports*, which are similar to those in the instant case in terms of duplicate lawsuits, that court determined that the level of parallel proceedings filed by one party in the second forum was a product of a reactive, vexatious lawsuit. The *Baseline Sports* court added that "such disregard for judicial time and resources should not, and need not, be tolerated." 341 F. Supp. 2d at 610. That court also opined that this type of duplicative litigation will undoubtedly present serious *res judicata* problems for either the first court or the second court depending on which court first reached the merits of the dispute. The instant case is much like the case in *Baseline Sports*.

The *Baseline Sports* court arrived at its decision to dismiss the later-filed case because it deemed it to be a "reactive and vexatious" lawsuit. In the matter at hand, Plaintiff also filed a "reactive and vexatious" complaint despite the fact that the exact same parties and exact same facts were to be litigated in another competent forum. It is clear that this *in rem* action should be dismissed while the same exact case is being litigated in the Korean Court.

### 5. Presence of Federal Question

Although this matter is based on a federal statute, the ACPA, the remedy is restricted to the forfeiture of the domain name or the domain name's transfer to the mark owner. *Alitalia-Linee*, 128 F. Supp. 2d at 343. Such limitation would allow this Court to dismiss this matter as the Korean Court is equally competent to look at the facts and weigh the strength of each party's case in order to determine who should be the owner of the domain name AIR CHINA.COM.

### 6. Adequacy of the State Court Proceedings to Protect Parties' Rights

The rights of Plaintiff will be adequately served in the first filed competent forum. While this factor relates to the correlation between state court proceedings or between state and federal proceedings, it should be noted that the Fourth Circuit views "parallel proceedings" in a more

general light when the two lawsuits have "substantially the same parties litigate substantially the same issues in different forums." *New Beckley Mining Corp*. 946 F. 2d at 1073. Generally, a court may weigh whether the state court will adequately protect the federal plaintiff's rights and provide full relief. *Baseline Sports*, 341 F. Supp. 2d at 611. Although the Court placed little weight on this factor in *Baseline Sports*, in regards to this *in rem* action, as previously stated, the Korean Court is a competent forum that is as capable as the US District Court to determine the rightful owner of the AIRCHINA.COM domain. Since Plaintiff is participating in the legal action before the Korean Court, there is no indication that Plaintiff will not receive adequate protection of their rights if they continue in that forum.

Consquently, the *in rem* action qualifies as exceptional circumstance where the same exact case was filed in this jurisdiction despite being previously filed and being subject to ongoing litigation in another competent jurisdiction. This premise was clear in *Colorado River* and has been unshakingly applied under similar circumstances in the Fourth Circuit. *See Baseline Sports,* 341 F. Supp. 2d at 611.

**3. Improper Service of Process**

Defendant is a Korean national whose native language is Korean and does not speak or understand English without difficulty. Plaintiff asserts proper service because (1) Eliot Clauss sent an email to Registrant and received a "reply from the Registrant acknowledging receipt of the email transmission of process on November 5, 2007" and (2) pleadings were sent via US Mail, FEDEX and UPS. Plaintiff does not state whether any of these documents and the emails were translated into Korean so that Defendant could read and understand these legal documents.

It is well settled that service of process in the federal court is designed to ensure due

process, protecting the defendant's right to answer and present defenses and objections. *Henderson v. United States,* 517 U.S. 654, 671-72 (1996). Service must be reasonably calculated to afford actual notice. *Mullane v. Central Hanover Bank and Trust Co.,* 339 U.S. 306, 314 (1950). The same standard applies to individuals residing outside the United States. Fed R. Civ. P. 4(K)(2).

Plaintiff is well aware that Defendant is a Korean national and of his current address. This fact is easily ascertainable because Plaintiff is currently participating in the Korea Court action and the information is located in the determinative WHOIS record. Fed. R. Civ. P. Rule 4(f) governs service of process of individuals located in a foreign country. It provides that service may be effected by "any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extra-judicial Documents." Fed. R. Civ. P. 4(f)(1). Service may also be effected "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3). Both the United States and Korea are parties to the Hague Convention. The Hague Conference on Private International Law maintains the Status Table for the Hague Convention on Service Abroad.[1] The Convention aims to establish a uniform and efficient method for serving individuals abroad. As the Supreme Court has explained in *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698-99 (1988):

> The primary innovation of the Convention is that it requires each state to establish a central authority to receive requests for service of documents from other countries. Once a central authority receives a request in the proper form, it must serve the documents by a method prescribed by the internal law of the receiving state or by a method designated by the requester and compatible with that law. The central authority must then provide a certificate of service that conforms to a specified model. A state also may consent to methods of service within its

---

[1] The web site is located at http://hcch.e-vision.nl/index_en.php?act=conventions.status&cid=17 (last visited March 1, 2008).

> boundaries other than a request to its central authority. [citations omitted]; *see also Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*, 20 U.S.T. 361, 658 U.N.T.S. 163.

The Hague Convention provisions are mandatory, so failure to comply voids the attempted service. *Id* at 698. Korea has not consented to service by email of foreign judicial documents. In fact, Korea does not even permit service of such documents by postal mail (*Convention on the Service Abroad,* 20 U.S.T. 361, 658 U.N.T.S. 163) (attached hereto as Exhibit D); when it ratified the Hague Convention, it objected to Article 10, which provides that in Korea, the only party authorized to effect service of process on a defendant is the court. Because the Hague Convention does not permit service in a manner to which a member state party has not consented, see 20 U.S.T. 361, arts. 11 and 19, service by email in this case would be "prohibited by international agreement" and not within the Court's discretion to authorize under Rule 4(f)(3).

The opinion in *Williams v. Adver. Sex L.L.C.*, 231 F.R.D. 483, 486 (N.D. W. Va. 2005), states that the "three separate methods through which service of process may be effected in a place not within any judicial district of the United States," as laid out in FRCP 4(f), "do not denote any hierarchy or preference of one method of service over another." *Id* at 485. In the case at hand Plaintiff seeks to serve pursuant to Rule 4(f)(3), alternative service, using the *in rem* procedure laid out by the ACPA. *In rem* actions may only be used when personal service cannot be obtained over the Defendant. The use of such alternative service is within the discretion of this Court. *Williams,* 231 F.R.D. at 486. In *Williams* this Court allowed service of process via email after the plaintiff established that her prior attempts at traditional service had failed, after she provided the defendant with knowledge of the case and after the defendant used that knowledge to erect barriers to service. *Id* at 488. In other words, defendant was hiding from

15

traditional service of process.

In the case at hand Plaintiff does not assert it attempted traditional service of process methods. Since there is an ongoing case in the Korean Court, making traditional service by the court relatively easy, any document filed by Plaintiff in this *in rem* matter could easily have been served on the Defendant. Plaintiff's requests to serve Defendant via email, in a language which Defendant is not proficient, is patently absurd and is clearly an attempt to do an end run around the Korean Court. Although Plaintiff doesn't elaborate, it makes much of an automated reply showing that Defendant read the email, however, was it an automatic receipt by the server? Or more likely, because the email was in English, Defendant's probable initial reaction was to delete it as spam.

Accordingly, this Court should dismiss this case for lack of proper service of process.

## Conclusion

Defendant took legal steps pursuant to the ICANN UDRP Rules to appeal the ADNDRC decision in a Korean Court, a court of competent jurisdiction over the address of the registrant of the domain name AIRCHINA.COM. Plaintiff is actively participating in the Korean matter. This Court does not have jurisdiction over the claims asserted in this action because (1) an ACPA *in rem* action and an ACPA action based on *in personam* jurisdiction for the same domain cannot be filed simultaneously, (2) when there are two parallel proceedings, the first-to-file doctrine and the *Princess Lida* doctrine establishes the forum vesting the Korean Court with jurisdiction of the parties and the domain name, and (3) Plaintiff failed to take adequate steps to effect service of process. Because US laws are favorable to trademark owners, many international companies bring ACPA *in rem* actions in the US even though these companies have sufficient contacts in

other countries where *in personam* jurisdiction of domain owners is available, in order to circumvent the ICANN UDRP appeal process.

      Therefore, Defendant respectfully requests that the Clerk's entry of Default be set aside and that the case be dismissed for lack of jurisdiction.

Respectfully Submitted,

JINSU KIM
APPEARING SPECIAL

\_\_\_\_\_/s/_____
David Ludwig, VSB# 73157
DUNLAP, GRUBB & WEAVER, PLLC
199 Liberty Street, SW
Leesburg, Virginia 20175
703-777-7319
Fax: 703-777-3656
dludwig@dglegal.com

    and

Stevan Lieberman
GREENBERG & LIEBERMAN, LLC
2141 Wisconsin Ave. NW, Suite C-2
Washington, DC 20007
202-625-7000
Fax: 202-625-7001
stevan@aplegal.com

*Attorneys for Defendant Jinsu Kim, appearing special*

Certificate of Service

   I hereby certify that on the 2nd day of April, 2008, I will electronically file with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Justin Marcus Reiner
PELS ANDERSON, LLC
4833 Rugby Avenue, 4th Floor
Bethesda, MD 20814
301-986-5570
Fax: 301-986-5571
jreiner@pallaw.com

Lawrence J. Anderson
PELS ANDERSON, LLC
600 Cameron St
Alexandria, VA 22314
703-684-1897
lja@pallaw.com

John T. Maher
CLAUSS & ASSOCIATES
220 Fifth Avenue
New York, NY 10001
212-279-3500
johnfmaher@yahoo.com

*Attorneys for Plaintiff*

              _____/s/_____
              David Ludwig, VSB# 73157
              DUNLAP, GRUBB & WEAVER, PLLC
              199 Liberty Street, SW
              Leesburg, Virginia 20175
              703-777-7319
              Fax 703-777-3656
              dludwig@dglegal.com